UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| QUEEN C. KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:05-cv-124 |
| v. ) | |
| ) | Honorable Joseph G. Scoville |
| RED ROOF INN, et al., ) | |
| ) | |
| Defendants. ) | **OPINION** |
| _____) | |

This is a civil rights action brought by a former employee of defendant Red Roof Inn, arising from plaintiff's termination from employment as a housekeeper on November 7, 2003. Plaintiff brings claims against Red Roof Inn and her former supervisor, Donna Barnell, for age discrimination under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and for age and race discrimination under the Michigan Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS §§ 37.2101-37.2804.

After the close of discovery, defendants moved for summary judgment on the ground that plaintiff had not established a *prima facie* case of either age or race discrimination, and that defendants had terminated plaintiff's employment for a legitimate, nondiscriminatory reason arising from her failure on two occasions to clean an assigned room but falsifying her housekeeping sheet to say that she had. Plaintiff opposes the motion, asserting that she has established a *prima facie* case and that defendants' proffered reason for termination was pretextual. The parties have consented in writing to the dispositive jurisdiction of a magistrate judge pursuant to 28 U.S.C. §

636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* Consent and Order of Reference, docket # 19). On March 3, 2006, the court conducted oral argument on defendant's motion. For the reasons set forth below, the court concludes that plaintiff has failed to establish a *prima facie* case of either age or race discrimination. Defendants' motion for summary judgment will therefore be granted.

## **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Terry v. LaGrois*, 354 F.3d 527, 530 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Rainer v. Union Carbide Corp.*, 402 F.3d 608, 614 (6th Cir. 2005); *Martingale LLC v. Louisville*, 361 F.3d 297, 301 (6th Cir.), *cert. denied*, 125 S. Ct. 453 (2004).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005). The party moving for summary judgment bears the initial burden of pointing out to the district court that there is an absence of evidence to support the nonmoving party's

case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once defendants show that "there is an absence of evidence to support the nonmoving party's case," plaintiff has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## Statement of Facts

The evidence of record, considered in a light most favorable to plaintiff, discloses the following:

Plaintiff, an African-American woman, was employed as a housekeeper by defendant Red Roof Inn on March 19, 1981, at its Benton Harbor motel. She retained that position until the time of her discharge on November 7, 2003. (King. Dep., 6, Plf. Ex. E). Plaintiff was 61 years of age at the time of her discharge. Defendant Donna Barnell was hired as general manager of the Benton Harbor motel on February 17, 2003. (Barnell Dep., 10, Plf. Ex. F). At that point, plaintiff became subject to Ms. Barnell's supervision.

The record indicates that plaintiff's work history with Red Roof Inn was very good until the year 2003. Plaintiff has submitted to the court a number of performance evaluations covering a twenty-year period. (Plf. Ex. D). These performance reviews generally show above average performance through the year 2002. Beginning in 2002, plaintiff was forced to take several leaves of absence because of a hand injury and subsequent surgery. As a result of this injury, plaintiff was on medical leave for a time, receiving worker's compensation. Her medical leave

began on February 17, 2003, the same day that Donna Barnell took over as general manager of the motel. This period of leave ended on April 1, 2003. In the summer of 2003, plaintiff was given restricted duties and ultimately again went on medical leave, receiving worker's compensation. Plaintiff's doctor released her to return to work without restrictions as of October 20, 2003. When plaintiff returned to work on that day, however, Barnell indicated that the paperwork was not in order and refused to allow her to come back to work. Plaintiff was reinstated two days later, on October 22, 2003. At that time, however, Barnell said to plaintiff, "You'll be gotten rid of." (King Dep., 46).

On the next day, October 23, 2003, the first incident occurred upon which plaintiff's termination was allegedly based. Plaintiff was assigned to clean, among other rooms, Room 115. She completed a housekeeping sheet (Def. Ex. 17) indicating that she had cleaned the room.[1] Barnell claimed, however, that a guest reported that the bedsheets were stained with blood. Defendant has produced a customer invoice confirming that the guest checked out on the same day that he arrived and that the hotel granted him a $30.00 adjustment, noting "blood on bed all over." Ms. Barnell testified that she spoke to plaintiff verbally about the incident and informed her that she would be "written up" for failure to clean the room properly. (Barnell Dep., 49-50). At that time, plaintiff contended that the customer had lied. (*Id.*, 50). Plaintiff admits that Barnell confronted her with the incident on the 24th or 25th of October and that plaintiff denied responsibility. (King Dep., 79-80). She also admits refusing to sign a document that indicated that she had left blood on the bed. (*Id.*,

---

[1] As part of her duties, plaintiff was to complete each day a housekeeping sheet, which listed the rooms assigned to her. (King Dep., 49-51). "It was a sheet with a list of rooms where you had checkouts and you had stayovers. And you checked the checkouts and you checked the stayovers and you clean them." (*Id.*, 50). The sheet was then turned in to the desk clerk, who logged into the "Fidelio" computer system the fact that the room was clean and ready for a guest to occupy. (*Id.*, 51-52; Barnell Dep., 16).

80). Barnell contends that she completed a disciplinary action form on October 28, 2003 (Def. Ex. 19), but plaintiff denies that she saw it until after her termination. (King Dep., 80). Consequently, construing the evidence in a light most favorable to plaintiff, the court concludes that shortly after October 23, 2003, Barnell accused plaintiff of having left bloody sheets on a bed, plaintiff denied that she had done so and refused to sign whatever paper was tendered to her, that Barnell prepared the disciplinary action form (Def. Ex. 19) on October 28, 2003, but that plaintiff did not see the form until after her termination.

        The second incident identified as forming the basis for plaintiff's termination occurred approximately two weeks later, on November 6, 2003. On that day, room 147 was among the rooms assigned to plaintiff for cleaning. Plaintiff completed a "Daily Quality Check" form for November 6, 2003, in which she indicated that she had cleaned room 147. (Def. Ex. 20). The form was signed and initialed by plaintiff. It is undisputed that, in reliance on this form, the desk clerk made a notation in the Fidelio computer system that room 147 was clean and ready for customer occupancy. On the afternoon of November 6, after plaintiff had left work, a customer checked into the hotel and was assigned room 147. (Barnell Dep., 16). The guest came back immediately and said that the room had not been cleaned. (*Id.*). Barnell then ran a "key report" to confirm that the room had been certified as ready for occupancy. She testified that she personally inspected the room and found that "the room had not been touched by a housekeeper." (*Id.*, 15-17). Plaintiff appeared for work the next day, November 7. Barnell met her at the door and told her that she had "missed" a room. Plaintiff contended that she had cleaned the room. After discussion "back and forth," Barnell terminated plaintiff's employment. (King Dep. 89-90). Barnell prepared a disciplinary action form dated November 7, 2003 (Def. Ex. 21), citing plaintiff for failure to fulfill her assigned

work responsibility in a guest-sensitive area, insubordination and refusal to obey orders, and falsifying a company record (the "Daily Quality Check" form). The disciplinary form recited that plaintiff had received a verbal warning in May 2003 for leaving a room dirty and on October 28, 2003, for the incident involving room 115.

After plaintiff was terminated, Barnell distributed her duties among the other housekeepers, including Sara Wilbur. Sara Wilbur, a white female significantly younger than plaintiff, had been hired on July 2, 2003. (Barnell Aff., Def. Ex. 26, ¶ 5). Because plaintiff was terminated during the facility's slow season, Red Roof Inn did not hire a housekeeper to replace her, but reassigned her rooms among the existing housekeepers. (*Id.*).

After her termination, plaintiff sought and was given access to her personnel file. In it, she discovered records of verbal reprimands that she claimed she never received and other evidence that led her to believe that Barnell had been documenting her file in order to build a false case for termination.[2] On April 20, 2004, plaintiff filed an administrative charge with the Equal Opportunity Employment Commission and the Michigan Department of Civil Rights, alleging that her termination was motivated by discrimination on account of age and disability. (Def. Ex. 23). The Michigan Department of Civil Rights dismissed plaintiff's complaint for insufficient evidence, and the EEOC adopted the state agency's findings and issued plaintiff a right-to-sue letter dated January 11, 2005. (Def. Ex. 25).

---

[2] Defendants contest plaintiff's allegations concerning the doctored evidence in her personnel file. Defendants, however, do not rely on any of the allegedly false verbal warnings in justifying plaintiff's termination. Any issue of fact regarding these earlier warnings is therefore not "material" within the meaning of Rule 56, as its resolution would not affect the outcome of the case. *See Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 447 (6th Cir. 2002).

-6-

On February 17, 2005, plaintiff initiated this civil action by the filing of a *pro se* complaint. Approximately three months thereafter, attorney Roosevelt Thomas entered his appearance for plaintiff.[3] Counsel filed a second and third amended complaint on behalf of plaintiff. As articulated in the third amended complaint (docket # 23), plaintiff raises a claim of age discrimination under the ADEA and the analogous Elliott-Larsen Civil Rights Act. The claim of race discrimination arises only under the Elliott-Larsen Act, as plaintiff failed to allege race discrimination in her administrative charge to the EEOC. Although the third amended complaint alleges that certain actions taken by defendants during the course of plaintiff's employment (including the allegedly false reprimands) were discriminatory, at oral argument plaintiff's counsel indicated that plaintiff's claims arise exclusively from her termination from employment, although facts preceding the termination give color and context to defendant's allegedly discriminatory intent. In response to plaintiff's claims of discrimination, defendants point to the two incidents in October and November 2003, as a legitimate, nondiscriminatory reason for discharge.

**Discussion**

The ADEA provides in pertinent part that it is unlawful for an employer "to discharge an individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1); *see Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2005). The Michigan Elliott-Larsen Civil Rights Act prohibits employment discrimination on a number of grounds, including race and age. MICH. COMP. LAWS § 37.2202(1)(a). The Michigan courts generally follow federal precedents in analyzing

---

[3] The court acknowledges Mr. Thomas's professionalism in assisting a *pro se* plaintiff in the litigation of a difficult civil rights matter. Without counsel's assistance, plaintiff may have been unable to articulate her claims or develop supporting evidence. Mr. Thomas's service in this matter has been in the highest traditions of the profession.

discrimination claims under the Elliott-Larsen Act, including federal cases establishing the manner in which a plaintiff may establish the *prima facie* case of discrimination.[4]  *See Radtke v. Everett*, 501 N.W.2d 155, 162 (Mich. 1993); *see also Everson v. Michigan Dep't of Corr.*, 391 F.3d 737, 748 n.14 (6th Cir. 2004).

A plaintiff can establish a claim of discrimination by producing either direct or circumstantial evidence.  *See White v. Columbus Metropolitan Housing Auth.*, 429 F.3d 232, 238 (6th Cir. 2005).  Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).  Once a plaintiff has produced credible direct evidence of discrimination, the burden then shifts to the employer to show that it would have taken the employment action even in the absence of discrimination. *Id.*  In the present case, plaintiff admittedly has no direct evidence of either race or age discrimination. Plaintiff can point to no written policies or verbal statements disclosing discriminatory animus, nor is there any evidence of discriminatory pattern, practice, or history in the record.  The closest thing to direct evidence existing in this case is the statement attributed to defendant Barnell to the effect that she would "get rid of" plaintiff, made approximately two weeks before termination.  As plaintiff's counsel candidly admitted at oral argument, however, this statement, while hostile, cannot be construed as disclosing animus against plaintiff on account of her race or age.

In order to survive summary judgment on a claim of either race or age discrimination using circumstantial evidence, the plaintiff must produce evidence sufficient to meet her *prima facie*

---

[4] The principal difference between Michigan law and federal law is that under the Elliott-Larsen Act, a supervisor such as defendant Barnell is deemed to be an "employer" who may be sued for acts of discrimination under the state Act, while supervisors may not be sued under Title VII. *See Elezovic v. Ford Motor Co.*, 697 N.W.2d 851 (Mich. 2005).

burden under the four-prong test initially developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 492 (1973). *See Browning v. Dep't of the Army*, 436 F.3d 692, 695 (6th Cir. 2006); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610-11 (6th Cir. 2002); *Lytle v. Malady*, 579 N.W.2d 906, 914-15 (Mich. 1998). Once plaintiff establishes a *prima facie* case, the burden of proceeding then shifts to defendant to proffer a legitimate, nondiscriminatory reason for termination. If defendant meets this burden, plaintiff must establish facts which, if believed by the jury, establish that the stated reason is mere pretext for the true discriminatory motive. *Browning*, 436 F.3d at 695; *White*, 429 F.3d at 238.

In a case of racial discrimination, it is plaintiff's burden to establish a *prima facie* case by showing (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside the protected class. *See Braithwaite v. Timkin Co.*, 258 F.3d 488, 492 (6th Cir. 2001); *see also Succarde v. Federal Express Corp.*, 106 F. App'x 335, 339 (6th Cir. 2004). The elements of a *prima facie* case for age discrimination are the same, except with regard to the fourth test. A plaintiff in an age case is not required to show that she was replaced by a person outside the protected class. Rather, plaintiff must show that she was replaced by a significantly younger person. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 410 (Mich. Ct. App. 1997).

Plaintiff clearly meets the first three elements of a *prima facie* case. She is a member of two protected classes, in that plaintiff is of African-American descent and, at the time of her discharge, she was 61 years of age. Defendants terminated her employment, which is clearly an adverse employment action. Despite defendant's arguments to the contrary, plaintiff was clearly

qualified for her position. Plaintiff held the housekeeper position for over twenty years, and her annual evaluations were very good. Despite these facts, defendant asserts that plaintiff was not qualified for her position, because plaintiff "not only failed to clean all rooms assigned to her, she falsely indicated that she had cleaned her rooms." (Def. Brief, docket # 37, at 7). Plaintiff's alleged failure to clean two rooms, and her alleged falsification of company records, constitutes defendant's legitimate, nondiscriminatory reason proffered for the termination. Under clear Sixth Circuit law, a court may not take into consideration the employer's proffered reason for termination as a predicate for finding that the plaintiff has failed to make a *prima facie* case. *See Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 587 (6th Cir. 2002); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000). Such an analysis improperly conflates distinct stages of the *McDonnell-Douglas* inquiry. *Cline*, 206 F.3d at 661. Rather, the court must examine plaintiff's evidence independent of the nondiscriminatory reason proffered by the defense as grounds for terminating plaintiff. *Id.* When the evidence of record is scrutinized, independent of the events leading up to plaintiff's termination, the conclusion is inescapable that plaintiff was qualified for the housekeeper position.

Plaintiff's claim falters, however, on the fourth element of her *prima facie* case. Plaintiff may satisfy this prong in one of two ways. First, she may show that she was replaced by a person outside the protected class (or, with regard to an age claim, by a significantly younger person). In order to meet this burden, plaintiff points to Sara Wilbur, a younger white person employed as a housekeeper at the Benton Harbor motel. It is beyond genuine issue, however, that defendants hired Sara Wilbur in July 2003, four months before plaintiff was terminated. The affidavit of Ms. Barnell establishes that defendants did not hire anyone to replace plaintiff, but merely assigned her former section randomly among other housekeepers. Plaintiff's testimony is

consistent with this conclusion. She testified that when she returned to work to pick up her check, "the *housekeepers* had to pick up the extra dirty rooms, which was my section." (King Dep., 104) (emphasis added). On these facts, Sixth Circuit authority requires a finding that plaintiff was not "replaced." "Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) (finding that plaintiff in an age discrimination case failed to establish a *prima facie* case). As the seminal Sixth Circuit case put it, a "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Barnes v. GenCorp., Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). In circumstances identical to those in the present case, the Sixth Circuit uniformly holds that a plaintiff is not replaced when the work is redistributed among other existing employees. *See, e.g., Grosjean v. First Energy Corp.*, 349 F.3d at 336; *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1115 (6th Cir. 2001). "A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes*, 896 F.2d at 1465 (citing *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1117 (6th Cir. 1980)). Plaintiff has produced no evidence tending to show that Sara Wilbur, or any other individual employee, was reassigned to perform plaintiff's duties. Rather, the uncontroverted evidence indicates that plaintiff's section was merely absorbed by the other housekeepers. Under unanimous Sixth Circuit authority, these facts preclude a finding that plaintiff was replaced by a person not in the protected class.[5]

---

[5] The parties disagree as to whether plaintiff had a permanent "section" assigned to her (as plaintiff contends) or received her room assignments each day (as defendants contend). For purposes of this motion, the court accepts (as it must) plaintiff's contention that she had a permanent section. The fact remains, however, that there is no evidence to support a finding that this section was reassigned to Sara Wilbur or any other individual housekeeper.

-11-

Alternatively, a plaintiff may satisfy her burden on the fourth element of a *prima facie* case by showing that she was treated less favorably than a similarly situated individual outside the protected class. In the context of discriminatory discipline or termination, "similarly situated" means that "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *accord Parries v. Makino, Inc.*, 148 Fed. App'x. 291, 296 (6th Cir. 2005); *Francois v. Sanders*, No. 248356, 2004 WL 2726141, at * 5-6 (Mich. Ct. App. Nov. 30, 2004). Although the comparison need not involve identical misconduct, the misconduct must be of comparable seriousness. *See Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 659 (6th Cir. 1999). In comparing employment discipline decisions, "precise equivalence in culpability between employees" is not required. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976). The plaintiff must, however, show that two employees were engaged in misconduct of "comparable seriousness" and that plaintiff was treated more severely than a person in an unprotected category. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000); *accord Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 727 n.5 (6th Cir. 1999); *Foster v. Ford Motor Co.*, No. 194695, 1997 WL 33344448, at * 3-4 (Mich. Ct. App. July 18, 1997).

The record is devoid of evidence showing that any nonprotected employee who engaged in misconduct of "comparable seriousness" was treated differently from plaintiff. The only evidence before the court concerning terminations by defendant Barnell at the Benton Harbor facility was presented by *defendants*. Barnell's unrebutted affidavit shows that she terminated four younger employees for the same or similar conduct for which she terminated plaintiff: Sylvia Kimble (born

1975), Ebony Partee (born 1983), Shirley Barnes (born 1959), and Andrea Frtalich (born 1968). (Barnett Aff., Def. Ex. 26, ¶ 7). Defendants' sworn interrogatory answers (Def. Ex. 27) indicate that, in addition to these four employees, Barnell discharged twenty-six other employees, including plaintiff. Fourteen of these employees were white; ten employees, including plaintiff, were black; and two are listed as Hispanic or Native American. These raw statistics raise no inference of discrimination against African-Americans or other minorities. Beyond that, plaintiff has not provided the court with any evidence that a nonprotected employee committed any infraction remotely similar to that committed by plaintiff but was punished less severely. In fact, the record is devoid of evidence concerning any similarly situated employee who was *not* fired. In the absence of proof of such a similarly situated employee, plaintiff fails to meet the second alternative for establishing a *prima facie* case of race or age discrimination.

Rather than pointing to an employee who was engaged in misconduct of "comparable seriousness" but was treated more leniently, plaintiff points to an unrelated incident involving Sara Wilbur.[6] Plaintiff asserts that on November 5, 2003, at 3:15 p.m., she asked to leave work early for a doctor's appointment at 3:30 p.m., with two rooms left uncleaned. She asserts that defendant Barnell told her that she could not leave until all rooms had been cleaned. Plaintiff asserts that Sara Wilbur was treated differently, in that Barnell allowed Wilbur to go home early, with eight rooms uncleaned, on November 7, 2003. The record lacks any details concerning the circumstances surrounding Barnell's decision to allow Sara Wilbur to go home early, such as the reason for the request or whether, like plaintiff's, it was made at the last minute. Plaintiff repeatedly testified that she did not know why Wilbur was allowed to go home early. (King Dep., 104-05). More basically,

---

[6] Ironically, Sara Wilbur was also terminated from employment by defendants, for reasons that do not appear of record.

-13-

a plaintiff alleging wrongful termination cannot meet her burden of establishing disparate treatment by pointing to an event unrelated to the termination decision. *Shah v. General Electric Co.*, 816 F.2d 264 (6th Cir. 1987), is on point. In *Shah*, the court found that a Title VII plaintiff had failed to establish a *prima facie* case of discrimination on the last prong of the *McDonnell Douglas* test, because he had failed to identify those individuals who were allegedly treated differently. 816 F.3d at 268. First, the court determined that plaintiff had failed to show that his employer had attempted to fill his vacancy with an unprotected person. *Id.* at 269-270. Turning to the second alternative, the court determined that plaintiff had not shown that any other employees "had work records and evaluations similar to plaintiff's" but had not been terminated. 816 F.2d at 270. The court rejected plaintiff's attempt to establish discrimination by reference to an unrelated event:

> Plaintiff next points out that Bill Huff, the white, number three man in the department, was invited to meetings with Sharpstone, but plaintiff was purposefully excluded. While this evidence might raise an inference of discrimination regarding plaintiff's treatment while employed, this is not the wrong for which plaintiff seeks recovery; *viz*, discriminatory discharge and denial of incentive compensation. The evidence regarding Huff does not have a close enough nexus to the discriminatory acts alleged as a basis for recovery to *alone* establish an inference of disparate treatment.

816 F.2d at 271.

The Sixth Circuit's decision in *Shah* precludes plaintiff's reliance on the allegedly unequal treatment given to plaintiff and Sara Wilbur in response to their requests to leave work early. Assuming that plaintiff and Sara Wilbur were "similarly situated" with regard to their requests (an assumption that is not supported by the record), there is no nexus between this allegedly discriminatory act and the "wrong for which plaintiff seeks recovery." *Shah*, 816 F.2d at 271. Plaintiff's burden under Sixth Circuit authority was to show that some employee who engaged in misconduct of "comparable seriousness" was not terminated from employment. Plaintiff has failed

to show this, and instead wishes to rely on an unrelated incident involving a request to leave work fifteen minutes early.  Plaintiff has not cited any controlling authority in which the appellate courts have found a *prima facie* case on such attenuated evidence.

Proof that a plaintiff belongs to a protected minority, that she was qualified for her position, and that she was fired, without more, simply fails to present evidence that plaintiff was "rejected under circumstances which give rise to an inference of unlawful discrimination." *Shah*, 816 F.2d at 269 (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Because plaintiff has failed to produce any evidence that she was either replaced by a nonminority employee or that an unprotected employee whose conduct was "of comparable seriousness" to plaintiff's was not discharged, plaintiff has failed to establish a *prima facie* case, and no rebuttable presumption of discrimination arises.  Defendants therefore are not put to the burden of producing a legitimate, nondiscriminatory reason for the discharge, as no evidence suggests that the discharge was motivated by discrimination on account of race or age.  In these circumstances, defendants are entitled to a summary judgment in their favor.

Dated:   March 8, 2006              /s/  Joseph G. Scoville
                                    United States Magistrate Judge